Knowlton *v.* Fitch.

[KINGS GENERAL TERM, May 7, 1866. *Scrugham, Lott, J. F. Barnard* and *Gilbert,* Justices.]

---

KNOWLTON *vs.* FITCH and POOR.

On the 5th of October, 1864, the plaintiff gave to the defendants, who were stock brokers, a written order to sell for his account one hundred Michigan Southern, at sixty-one three eighths. The plaintiff had no stock in the hands of the defendants, nor did he ever supply them with any, to enable them to execute the proposed sale. Both parties contemplated a speculative transaction, called a "short sale." The defendants did not make such a sale, but sold the stock, and, the next day, delivered the stock sold, which they had borrowed from another customer. On the 15th of November, 1864, the defendants bought one hundred shares, Michigan Southern, for the account of the plaintiff, at seventy-three, without any specific orders to do so. *Held* that the plaintiff was not liable for the difference in the price of the stock as shown by the sale on the 5th of October, and the purchase on the 15th of November.

APPEAL from a judgment ordered at the circuit, on a trial before the court, without a jury.

The action was brought to recover a balance in the hands of the defendants as stock brokers, left by the plaintiff as a margin for stock speculations, with interest. The balance claimed was $1249.19, alleged to have been in the hands of the defendants, on the 11th day of November, 1864. There was a balance of $1249.19 standing to the plaintiff's credit on the 11th day of November, 1864, on transactions prior to October 5th, 1864; and there was also a credit of $6137.20, cash, received for a short sale of 100 shares of Michigan Southern railroad stock, made on the written order of the

plaintiff on said 5th of October, which sale was still outstanding. On the 5th of November, the market price of Michigan Southern having so risen as to absorb the plaintiff's entire margin, the defendants notified him of the fact, and required him to furnish more margin, or they would take in the stock " at such time as they should deem best for their own safety." The plaintiff did not furnish more margin, as required, and the defendants, after waiting for it until November 15, bought in the 100 shares for account of the plaintiff at 73, which reduced the plaintiff's margin from $1249.19 to $76.85. The justice before whom the action was tried, found in favor of the plaintiff for $1249.19, the sum claimed, with costs, and judgment being entered on such finding, the defendants appealed.

*John Sessions,* for the appellants.

*L. A. Fuller,* for the respondent.

*By the Court,* GILBERT, J.    We do not deem it necessary to discuss the technical points.    Upon the merits, the case is this :   On the 5th October, 1864, the plaintiff gave to the defendants, who are stock brokers, a written order to sell for his account 100 Michigan Southern at 61 3-8.   The plaintiff had no stock in the hands of the defendants, nor did he ever supply them with any, to enable them to execute the proposed sale.    He evidently contemplated a speculative transaction, called, in common parlance, a " short sale," and the defendants so regarded the order.    One of them testified, on the trial, that " all these transactions for the plaintiff were short sales ;" and the same witness defines a short sale to be " a sale before purchase, with a view of buying in when the market falls, at a lower price than we have sold."    The defendants, in this instance, did not make such a sale, but sold this stock, and the next day delivered the stock which they sold. It appears that they borrowed the stock, which they delivered, from another customer.    They gave the plaintiff no notice

that they had sold or delivered the stock. The only evidence, on this point, is that of one of the defendants, who says : "From the time of the sale, on the 5th October, to the time I sent the letter, dated November 5th, to the plaintiff, his son was in the office almost daily *to inquire* about the transaction of the short *sale* of the 100 shares of Michigan Southern." What they told the son is not disclosed. On the 15th November, 1864, the defendants bought 100 shares Michigan Southern for the account of the plaintiff, at 73. No order was given by the plaintiff for this purchase. But the other defendant testified that the defendants had general instructions from the plaintiff to act for him on their judgment and discretion, and that his orders were generally made after the transaction.

It appears also that during the month of the purchase the parties frequently talked about it ; that the plaintiff made no complaint ; and that on one occasion he expressed regret that he had made the loss, but finally repudiated the transaction. The question, then, is, whether the plaintiff is liable for the difference in the price of this stock, as shown by the sale on the 5th October, and the purchase on the 5th November. We are of opinion that he is not.

I. If the sale on the 5th November was made for the account of the plaintiff, it was executed. The stock was delivered. The defendants received the price thereof. Nothing remained to be done by them, as agents, for the plaintiff. The purchase on November 15th, therefore, was unauthorized, and unnecessary, there being no pretense of any other sale, short or otherwise, for the plaintiff.

II. If the defendants borrowed the stock for the plaintiff, and the purchase was made to replace such stock, they had no authority to do so.

III. If the plaintiff authorized the defendants to sell their own stock, and buy it in again whenever they pleased, and agreed to pay any loss which might accrue, the transaction was void, (1 *R. S.* 662, § 1.) The act of April 10, 1858, does not embrace such a contract.

IV. If the authority actually given to the defendants was to make an executory contract for the sale of stock deliverable at a future day, the defendants made no such contract.

Contracts of the latter description, being legal, it is the duty of courts to protect agents who in good faith make them for their principals. But the authority must be given, and the agency must be actually assumed. It will not do to set up an agency after a loss has happened, upon a vague and indefinite transaction like that presented by this case. The evidence is insufficient to establish a ratification by the plaintiff of the purchase in question. (*Brass* v. *Worth*, 40 *Barb.* 654.)

The judgment therefore must be affirmed, with costs.

. [ORANGE GRNERAL TERM, September 17, 1866. *Scrugham, Lott, J. F. Barnard* and *Gilbert,* Justices.]