Lawrence *v.* Maxwell.

ALEXANDER C. LAWRENCE, Respondent, *v.* JAMES E. MAX-
WELL, Appellant.

(GENERAL TERM, FIRST DEPARTMENT, JUNE, 1872.)

A broker who, without notice to his principal, disposes of stock of his
principal, deposited with him as security against the liability incurred
by him in making a sale known as a short sale of coin on behalf of the
principal, is liable to such principal for the conversion of the stock,
after a demand made and refusal to deliver the same, and tender of the
amount due upon the transaction in which loss has occurred.

Evidence is immaterial, in an action for such conversion, tending to show a
custom existing among brokers, in the city in which the transactions
occurred, to use the stock held by them as security in the manner in
which the stock was held by the defendant.

Evidence is also immaterial in such action to show that the defendant had
previously held stock of the plaintiff as security, which he had used in a
similar manner without objection.

The just and established rule of damages in such a case is the highest
price of the stock between the date of the demand or conversion and
the day of trial.

THIS cause was tried at a Circuit Court, before Justice VAN
BRUNT and a jury, at the city of New York, on the 8th day
of June, 1871. The action was brought to recover damages
for the alleged conversion of 400 shares of the Atlantic Mail
Steamship Company. At the several times in question the
defendant was a broker, doing business as such in the city of
New York, and the stock in question was pledged by the
plaintiff to him as security against loss for conducting certain
transactions in the purchase and sale of gold coin. At the
close of these transactions, which embraced a period of about
a month, the account rendered to the plaintiff by the defend-
ant showed a balance due to the latter of $11,600.22, which
sum the plaintiff duly tendered and demanded the return of
the stock. The defendant refused to return the stock, and
thereupon this action was brought. The defendant had, in
fact, pledged the stock some time before, on other transac-
tions, to raise money generally for his use.

The defence principally insisted upon at the trial was pre

dicated upon an alleged custom and usage in the city of New York, authorizing brokers to sell or otherwise dispose of the securities pledged, as in this case, as the broker might deem proper.

The jury, under the instruction of the court, as stated in the opinion, found a verdict for the plaintiff for $36,098.22, on which judgment was entered, and the defendant appealed.

*W. W. McFarland,* for the respondent.

*John E. Burrill,* for the appellant.

Present—LEONARD and GILBERT, JJ.

LEONARD, J. No exception having been taken to the charge of the judge at the trial, it must be assumed that the case was properly submitted to the jury, and that they have found, in conformity with the evidence of the plaintiff, that there was no consent on his part that the defendant might use the 400 shares of the stock of the Atlantic Mail Steamship Company deposited with him by the plaintiff. It must, then, be considered as security against the liability which the defendant assumed for the plaintiff, as agent in selling a large amount of gold coin, which neither the plaintiff or defendant possessed. It is a sale known among stock operators as a short sale. Such sales are effected by a contract made by the broker with some other party to deliver the article sold at a specified day in the future, or by selling the article, and borrowing it to make immediate delivery. In the latter case the broker or agent becomes indebted to the party from whom the gold or stock has been borrowed, and liable to return the article borrowed in specie, when called for, or on whatever terms it has been borrowed. He is thus exposed to the fluctuations of the market, by a rise or fall, in the same manner that he would be if the gold or stock had been sold to be delivered at a future day. The latter form was adopted in this case. By the rise in the price of gold a loss of about $11,600 ensued, at the time when the plaintiff directed the defendant to close the transaction. What were the rights of

the defendant, as against the plaintiff or the said stock? Before he could lawfully sell the stock, it was his duty to notify the plaintiff of the amount due to him, and call on him for payment. If the plaintiff neglected to provide money to meet the losses sustained by the defendant on the liability incurred as the plaintiff's agent, he might, on due notice, sell so much stock held as security as should be necessary to raise the sum required. The defendant was at liberty to call for money as fast as loss accrued; but before he used the stock, his duty, as well as the law, required that he should call on the plaintiff for money to meet his loss, or get his consent to use or borrow upon the stock which had been deposited with him. The defendant did not adopt such a course. He used the stock to borrow money for his own purposes, or otherwise disposed of it, without any consent of the plaintiff.

He offered evidence at the trial to prove that it was customary among brokers in New York to use the stock held by them as security, in the manner this stock was held by the defendant, and, upon objection, such evidence was excluded. Also, that the defendant had previously held stock of the plaintiff as security, which he had used in a similar manner without objection or complaint on the part of the plaintiff, although he knew of it; this was also excluded. The evidence so offered was clearly immaterial. Such a custom is simply a violation of the rights of the principal. A long-continued course of wrong-doing or violation of law will never prove a valid custom to continue it. Brokers who use the stock of their principals, relying upon any such custom, are liable to return it when called upon, if their demands or liabilities, incurred on the security of the stock, have been satisfied. If they cannot return it, they are liable in damages for the injury which has been caused by the loss of the stock. It is a clear violation of trust, and an action, as for a conversion of the stock, is within the election of the principal. The just and established rule of damages in such a case is the highest price of the stock between the date of the demand or conversion and the day of trial. Such was the rule adopted,

correctly, at the trial of this action.   It is no excuse or defence that the broker has taken advantage of the possession of his principal's stock, and used it without complaint on his part, on previous occasions.   On those occasions he returned or accounted for the stock so used, and no cause of complaint remained.

There appears to be no exception in the case as to the rule of damages adopted at the trial.

The judgment should be affirmed, with costs.

GILBERT, J.   No point having been made as to validity of contract, I concur.   (See 48 Barb., 593 ; 55 Pa., 294.)

Judgment affirmed.