Leonard, J.
No exception having been taken to the charge of the judge, at the trial, it must be assumed that the case was properly submitted to the jury, and that they have found in conformity with the evidence of the • plaintiff, that there was no consent on his part that the defendant might use the 400 shares of the stock of the Atlantic Mail Steamship Company deposited with him by the plaintiff. It must then be considered as security against the liability which the defendant assumed for the plaintiff, as agent, in selling a large amount of gold coin, which neither the plaintiff nor defendant possessed. It is a sale known among stock-operators as a short sale. Such sales are effected by a contract made by the broker with some other party, to deliver the article sold, af a specified day in the future, or by selling the article, arid borrowing it to make immediate delivery. In the latter case, the broker or agent becomes indebted to the party from whom the gold or stock has been borrowed, and liable to return the article borrowed, in specie, when called for, or on whatever terms it has been borrowed. He is thus exposed to the fluctuations of the market, by a rise or fall, in the same manner that he would be if the gold or stock had been sold to be delivered at a future day. The latter form was adopted in this case. By the rise of the price of gold, a loss of about $11,600 ensued, at the time when the plaintiff directed the defendant to close the transaction.
What were the rights of the defendant as against the plaintiff or the said stock % Before he could lawfully sell the stock, it was his duty to notify the plaintiff of the amount due to Mm, and call on Mm for payment. If the plaintiff neglected to provide money to meet the losses sustained by the defendant on the liability incur *97 red as the plaintiff’s agent, he might, on due notice, sell so much stock held as security, as should be necessary to raise the sum required.
The defendant was at liberty to call for money as fast as loss accrued. But before he used the stock, his duty, as well as the law, required that he should call on the plaintiff for money to meet his loss, or get his consent to use, or borrow upon, the stock which had been deposited with him. The defendant did not adopt such a course. He used the stock to borrow money for Ms own purposes, or otherwise disposed of it, without any consent of the plaintiff.
He offered evidence, at the trial, to prove that it was customary among brokers, in Hew York, to use the stock held by them as security, in the manner tMs stock was held by the defendant; and upon objection, such evidence was excluded. Also that the defendant had previously held stock of the plaintiff, as security, wMch he had used in a similar manner without objection or complaint on the part of the plaintiff, although he knew of it. This was also excluded.
The evidence so offered was clearly immaterial. Such a custom is simply a violation of the rights of the principal. A long continued course of wrong doing, or violation of law, will never prove a valid custom to continue it. Brokers who use the stock of their principals relying upon any such custom, are liable to return it when called upon, if their demands or liabilities, incurred on the security of the stock, have been satisfied. If they cannot return it, they are liable in damages for the injury wMch has been caused by the loss of the stock. It is a clear violation of trust, and an action as for a conversion of the stock is witMn the election of the principal. The just and established rule of damages, in such a case, is the Mghest price of the stock between the date of the demand or conversion and the day of *98 trial. Suck was the rule adopted at the trial of this action.
[First Department, General Term, at New York,
November 4, 1872.
Leonard and Gilbert, Justices.]
It is no excuse or defence that the broker has taken advantage of the possession of his principal’s stock, and used it without complaint on his part, on previous occasions. On those occasions he returned or accounted for the stock so used, and no cause of complaint remained.
There appears to be no exception, in the case, as to the rule of damages adopted at the trial,
The judgment should be affirmed, with costs,
Gilbert, J. Ho point having been made, as to the validity of the contract, alleged, I concur. (See Knowlton v. Fitch, 48 Barb. 593 ; 55 Penn. 294.)
Ingraham, P. J., did not sit.
Judgment affirmed.